**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **WHITNEY BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 11-0657-WS-M** |
| | ) |
| **POINT CLEAR DEVELOPMENT,** | ) |
| **LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 34), as supplemented at document 43. Also pending is the Mitchell Defendants' Motion to Strike (doc. 46). The Motions are now ripe for disposition.

**I.    Background.**

This case, like many filed in this District Court of late, arises from an unpaid promissory note and a financial institution's attempts to collect the debt from both the borrower and certain guarantors. Plaintiff, Whitney Bank ("Whitney"), brought this action against a host of defendants, including Point Clear Development, LLC ("Point Clear"), J. Myles Reed, Barton E. Kaiser, Thomas W. Mitchell, and Thomas E. Mitchell, alleging state-law causes of action against Point Clear for breach of its repayment obligations under a note, and against the other defendants for breach of separate continuing guaranties.[1] Federal jurisdiction was properly predicated on 28

---

[1]    The Amended Complaint also named a sixth defendant, Anthony Kaiser, and alleged that he too was in breach of a continuing guaranty. After Anthony Kaiser commenced Chapter 7 bankruptcy proceedings, however, plaintiff filed a Notice of Voluntary Dismissal seeking to dismiss its claims against that defendant. On May 8, 2012, the undersigned entered an Order (doc. 44), dismissing plaintiff's claims against Anthony Kaiser without prejudice pursuant to Rule 41(a)(1)(A)(i), Fed.R.Civ.P. By Supplement dated May 8, 2012, plaintiff confirmed that "Anthony Kaiser is no longer a party to this lawsuit and that Whitney no longer seeks a judgment against him." (Doc. 43, at 2.) In light of these developments, nothing in this Order purports to (Continued)

U.S.C. § 1332, inasmuch as the Amended Complaint sufficiently alleges complete diversity of citizenship between Whitney and each defendant, and that the amount in controversy exceeds the $75,000 jurisdictional threshold.

>    A.    *The Agreements.*

The pertinent facts are both uncontested and straightforward.  On October 29, 2009, defendant Point Clear executed and delivered to Whitney National Bank a Renewal Note of Note #1158, in the original principal amount of $3,000,000.  (Sander Aff. (doc. 35, Exh. A), ¶ 2.)  The Renewal Note specified that interest would accrue at a variable rate established by the "One Month LIBOR" rate plus 225 basis points (subject to a minimum effective rate of 4.50%);[2] that interest would be computed using a 360-day year; and that interest would accrue immediately and be payable on a monthly basis beginning on November 3, 2009.  (Sander Aff., Exh. 1, at 1.)  The Renewal Note further provided that upon default, "interest shall, to the extent permitted by law, accrue at the Default Rate.  The Default Rate shall be the maximum rate authorized by applicable law, and if applicable law establishes no maximum rate, then Eighteen Percent (18%) per annum."  (*Id.* at 1-2.)

The Renewal Note was secured by certain collateral, including mortgages on multiple pieces of real estate.  (*Id.* at 2.)  However, the Renewal Note specified that Whitney National Bank had no obligation or responsibilities with respect to the collateral, and that it possessed sole discretion as to what action (if any) to take as to the collateral in the event of default.  (*Id.* at 2-3.)

---

adjudicate any claims that Whitney Bank may have previously asserted (or may assert in the future) against that defendant.  The Rule 56 Motion is **moot** as to Anthony Kaiser.

[2]    The Court takes judicial notice that the One Month LIBOR rate consistently hovered around one-quarter of one percent (0.25%) between October 2009 and October 2011, ranging from a high-water mark of 0.3487% in June 2010 to a low-water mark of 0.1866% in July 2011.  *See generally Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1235 n.12 (11th Cir. 1999) ("We take judicial notice of the Prime Rate on February 14, 1989 …. This figure was provided by the Federal Reserve Board, and cannot reasonably be disputed."); *Transorient Navigators Co., S.A. v. M/S Southwind*, 788 F.2d 288, 293 (5th Cir. 1986) ("The district court may properly take judicial notice of prevailing interest rates.").  The precise value of One Month LIBOR during the relevant period is not important.  What is important is that this value remained well below 1% at all material times, such that the contractual minimum interest rate of 4.50% was in effect for the lifetime of the Renewal Note.

The Renewal Note also contained a fee-shifting provision, stating that "Obligor agrees to pay the reasonable fees and costs of any attorney-at-law employed by Bank to recover sums owed or to protect Bank's interests with regard to this Note." (*Id.* at 3.)  A choice-of-law provision in the Renewal Note indicated that it would be governed by Alabama law.

The record also establishes that the four individual defendants (J. Myles Reed, Barton E. Kaiser, Thomas W. Mitchell, and Thomas E. Mitchell) signed Continuing Guaranties in Whitney National Bank's favor on October 29, 2009.  Each Continuing Guaranty contained an identical provision under which the guarantor "jointly, severally, and unconditionally guarantees to Bank the prompt payment in full of all obligations and liabilities of [Point Clear Development, LLC] to Bank, direct or contingent, due or to become due, now existing or hereafter arising, … with interest, attorneys' fees, expenses of collection and costs, and further including … obligations to Bank on promissory notes." (Doc. 35, Exh. 2, ¶ 1.)  The Guaranties further provided that the guarantors would be bound by all terms and conditions of any notes or agreements in favor of Whitney National Bank executed by Point Clear Development, LLC.  (*Id.*, ¶ 2.)  The Guaranties are likewise governed by Alabama law.  (*Id.*, ¶ 9.)

### B.     The Merger.

As noted, both the Renewal Note and the Continuing Guaranties were executed by defendants in favor of Whitney National Bank.  The named plaintiff in this action is "Whitney Bank," not "Whitney National Bank."  The summary judgment record duly explains this discrepancy.  In particular, the record shows that, effective June 4, 2011, Whitney National Bank merged into Hancock Bank of Louisiana, with the surviving entity being called "Whitney Bank." (Sander Aff, ¶¶ 4-6 & Exhs. 3 (at Article Five) & 4.)  These facts are clearly established and undisputed.  Inasmuch as the record unambiguously reflects that "Whitney Bank" is the successor by merger to Whitney National Bank, Whitney Bank is the proper plaintiff to enforce the terms of the Renewal Note and Continuing Guaranties.  No defendant has suggested otherwise on summary judgment, much less developed such an argument in opposition to the pending Rule 56 motion.

### C.     The Breach.

By the terms of the Renewal Note, Point Clear was to repay the $3 million in principal to Whitney Bank on October 3, 2011.  (Sander Aff., ¶ 9 & Exh. 1.)  However, Point Clear failed to repay the principal on that date.  (Sander Aff., ¶ 10.)  This omission constituted a default under

the Renewal Note.  (*Id.*, Exh. 1 at 3 (listing as an event of default "the non-payment of any principal or interest on this Note on the date when due").)  The Renewal Note provided that such a default triggered accrual of interest at the 18% default rate from that date forward.  (*Id.* at 1-2.)[3]

Plaintiff's undisputed evidence reflects that Point Clear's unpaid principal balance on the Renewal Note at this time is $2,900,000.  (Sander Aff., ¶ 12.)  Plaintiff also seeks to recover interest owed under the Renewal Note, consisting of (i) regular interest accruing at the regular 4.50% rate from the date of breach through the date of default; and (ii) default interest accruing at the 18% default rate from the date of default through the date of entry of judgment in this matter.[4]  And plaintiff further claims attorney's fees and costs incurred in collecting moneys owed pursuant to the Renewal Note, in an amount which plaintiff pegs at $145,000 (or 5% of the outstanding principal).

The breach of the Renewal Note by Point Clear implicates the Continuing Guaranties, pursuant to which each of the four individual defendants unconditionally guaranteed payment to Whitney Bank of all obligations owed by Point Clear (specifically including promissory notes, interest, attorney's fees, and costs of collection).  Plaintiff has made an uncontested showing that

---

[3]      To be precise, the default rate is defined by the Renewal Note as being "the maximum rate authorized by applicable law, and if applicable law establishes no maximum rate, then Eighteen Percent (18%) per annum."  (Sanders Aff., Exh. 1 at 1-2.)  Alabama law does not establish a maximum rate of interest for loans such as this.  *See* Ala. Code § 8-8-5(a) ("Any person or persons, [or] corporations … may agree to pay such rate or rates of interest for the loan … as such person [or] corporation … may determine, notwithstanding any law of this state otherwise prescribing or limiting such rate or rates of interest; provided, that the original principal balance of the loan … is not less than $2,000.").  There being no maximum rate established by applicable law, the 18% rate is effective by the terms of the Renewal Note.

[4]      In that regard, plaintiff quantifies the unpaid regular interest as accruing from August 3, 2011 (the date on which Point Clear ceased making interest payments) through October 25, 2011 (the day before Whitney Bank sent a letter to Point Clear providing notice of default under the Renewal Note).  (Sander Supp. Aff. (doc. 48, Exh. A), ¶¶ 5-7.)  Plaintiff tallies default interest as accruing beginning on October 26, 2011 (the date on which notice of default was given) and extending through the present date, all at the 18% default rate specified in the Renewal Note.  (*Id.*, ¶ 8.)

none of the individual defendants have made any payments of Point Clear's indebtedness to Whitney Bank under the Renewal Note.  (Sander Aff., ¶ 14.)[5]

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

---

[5]     By the terms of the Continuing Guaranties, the guarantors "waive[d] all notice and pleas of presentment, demand, dishonor and protest."  (Sander Aff., Exh. 2, at ¶ 2.)  As such, Whitney Bank need not plead or prove any such notice in order to trigger the guarantors' contractual obligations.  *See Sharer v. Bend Millwork Systems, Inc.*, 600 So.2d 223, 226 (Ala. 1992) ("The language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it."); *BP Products North America Inc. v. Merritt Oil Co.*, 812 F. Supp.2d 1297, 1304 (S.D. Ala. 2011) (similar).

III.    **Analysis.**[6]

As an initial proposition, none of the defendants challenge the authenticity of the Renewal Note or the Continuing Guaranties, nor do they dispute their assent to such agreements or the non-payment of their obligations under same.  In other words, all defendants appear to agree with plaintiff's position that they entered into certain agreements with Whitney National Bank and then failed to make payment when it became due.[7]  On that basis, the Court finds that Whitney Bank has proven liability as to each defendant for breach of the Renewal Note (by Point Clear) and Continuing Guaranties (by the other defendants), and that it is entitled to entry of summary judgment as to liability.  The only remaining question is damages.

As to several components of damages, however, plaintiff's Rule 56 Motion is not uncontested.  To the contrary, defendants Point Clear, Reed, and Barton Kaiser (the "Point Clear Defendants") oppose the Motion for Summary Judgment on the following grounds: (i) Whitney Bank failed to take reasonable steps to mitigate its damages; (ii) plaintiff's request for attorney's fees is unsupported and unreasonable; and (iii) any post-judgment interest should accrue at the statutory rate specified in 28 U.S.C. § 1961(a) rather than the default rate of interest specified in the Renewal Note.  (*See* doc. 45.)  And defendants Thomas W. Mitchell and Thomas E. Mitchell (the "Mitchell Defendants") have filed their own opposition brief, arguing that (i) the default interest rate is an uncollectable penalty under Alabama law, and (ii) the attorney's fee claim fails for insufficient proof.  (*See* doc. 47.)  The Court will consider each argument by category.

---

[6]     The Court applies Alabama law to the legal issues presented on summary judgment in this case because both the Renewal Note and the Continuing Guaranties provide that they will be governed by Alabama law, and because "a federal court sitting in diversity will apply the choice of law rules for the state in which it sits."  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005).

[7]     In the Report of Parties' Planning Meeting (doc. 30), defendants conceded most of these points.  Specifically, defendants Thomas W. and Thomas E. Mitchell admitted "that they signed a guaranty guaranteeing certain obligations of Point Clear Development, LLC to Whitney National Bank, that Point Clear Development did not pay the underlying Note, that Whitney Bank … made demands upon them, and that they did not perform in accordance with those demands."  (Doc. 30, at 2.)  For its part, defendant Point Clear "admits that it executed a promissory note in favor of Whitney National Bank and that [it] has not satisfied the amount owed under the note."  (*Id.* at 3.)  And defendants Barton Kaiser and Myles Reed "admit that they signed a guaranty guaranteeing certain obligations of [Point Clear] to Whitney National Bank."  (*Id.*)

**A.      *Plaintiff's Duty to Mitigate Damages.***

The Point Clear Defendants maintain that Whitney Bank's Rule 56 Motion should be denied for failure to mitigate damages.  In these defendants' view, Whitney Bank breached its duty to mitigate by "(1) failing to foreclose on the property securing the loan; and (2) failing to renew the loan" (doc. 45, at 3) when Point Clear defaulted under the Renewal Note.

As a general matter, Alabama courts have recognized a duty to mitigate in the breach of contract context.  *See, e.g., Neumiller Farms, Inc. v. Cornett*, 368 So.2d 272 (Ala. 1979) ("Generally, the damages recoverable by a nonbreaching party will be measured as though that party had made a reasonable effort to avoid the foreseeable adverse consequences of the breach.").[8]  But the concept of mitigation in the breach-of-contract context has certain rigid, well-defined boundaries.  For example, "the rule does not require an aggrieved party to sacrifice a substantive right or forego an advantageous opportunity for the benefit of the breaching party." *Neumiller Farms*, 368 So.2d at 276.  Nor may a breaching party utilize the mitigation doctrine to shift the risk of harm to the non-breaching party.  *See, e.g., Gradco, Inc. v. St. Clair County Bd. of Educ.*, 477 So.2d 365, 368 (Ala. 1985) ("A party is obligated to mitigate damages only if they are reasonably foreseeable and the effort to avoid them will not entail undue risk."); *American Savings Bank, F.A. v. United States*, 98 Fed. Cl. 291, 312 (Fed. Cl. 2011) ("The non-breaching party is only required to take reasonable steps to mitigate damages," and need not take actions that "do not limit the harm [but] merely shift it around").  And "[t]he rule of mitigation of damages may not be invoked by a contract breaker … merely for the purpose of showing that the injured person *might* have taken steps which … would have been more advantageous to the defaulter." *In re Kellett Aircraft Corp.*, 186 F.2d 197, 198-99 (3rd Cir. 1950); *see also Smith v. Positive Productions*, 419 F. Supp.2d 437, 449 (S.D.N.Y. 2005) ("where a choice has been

---

[8]      This approach is in line with those of other jurisdictions.  *See, e.g., TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 262 (Pa. 2012) ("A party who suffers a loss due to a breach of contract generally has a duty to make reasonable efforts to mitigate his losses."); *Branch Banking and Trust Co. v. Lichty Bros. Const., Inc.*, 2011 WL 883912, *3 (N.D. Ga. Mar. 11, 2011) (explaining that failure to mitigate damages is an affirmative defense to a breach of contract claim under Georgia law); *Culebra II, LLC v. River Cruises and Anticipation Yachts, LLC*, 564 F. Supp.2d 70, 79 (D. Me. 2008) (under Maine law, "[a] party who suffers losses pursuant to a contract has an affirmative obligation to mitigate any damages").

required between two reasonable courses, the person whose wrong forced the choice cannot complain that one rather than the other was chosen") (citation omitted).

Here, the Point Clear Defendants assert that, rather than suing them for breach of the Renewal Note and Continuing Guaranties upon default, Whitney Bank was duty-bound either to renew the loan or to foreclose on the collateral to prevent default interest charges from accruing. They identify not a single authority applying Alabama law (or any law, for that matter) to impose such obligations on a lender following a borrower's and guarantor's default. Nor has the undersigned's research turned up decisional authority finding that the duty to mitigate operates to constrain a bank's contractual right to default interest when a borrower or guarantor breaches a promise to pay. As such, the Point Clear Defendants appear to be advocating a novel, heretofore-unrecognized application of the doctrine of mitigation of damages.

The most fundamental problem with this argument is that it would effectively blot out the plain terms of the contracts that the Point Clear Defendants executed. Rather than mandating that Whitney Bank renew the loan or foreclose on the collateral in case of default, the Renewal Note provided that "[w]ithout releasing or affecting any of its rights, Bank may, … in its sole discretion … take any one or more of the following actions: (a) release, renew or modify the obligations of Borrower …; (b) release, exchange, modify or surrender in whole in part Bank's rights with respect to any collateral for this Note …." (Sander Aff., Exh A., at 3.) The Continuing Guaranties had similar terms. (*Id.*, Exh. B, at ¶ 6.) The point is that the Renewal Note afforded Whitney Bank the right – at its sole option and in its sole discretion – to decide what to do in the event of default, including renewing the loan or taking action as to the collateral. Defendants cannot use the duty to mitigate as a *post hoc* vehicle for superimposing new advantageous terms on (and for eradicating disadvantageous terms from) their bargain. Again, "the rule does not require an aggrieved party to sacrifice a substantive right or forego an advantageous opportunity for the benefit of the breaching party." *Neumiller Farms*, 368 So.2d at 276. That is effectively what the Point Clear Defendants would do here by asserting that Whitney Bank <u>must</u> foreclose on the collateral or renew the loan, rather than pursuing litigation during which default interest continues to accrue on the entire unpaid principal sum.

There are other insuperable defects in defendants' position. Notably, it would fly in the face of reason, common sense and equity to construe the duty to mitigate as imposing on a lender the obligation to reward a defaulting borrower by renewing the loan. To bar a lender from

pursuing contractual remedies, to rewrite contractual terms giving the lender discretion as to whether to renew the loan, and to force the lender to continue doing business with a borrower that has demonstrated inability or unwillingness to keep its promises would constitute an unreasonable overreach of mitigation principles.  Not surprisingly, courts have declined to contort the duty to mitigate in such a perverse fashion.  *See, e.g., SE Property Holdings, LLC v. Foley and Barnes, LLC*, 2012 WL 1382688, *4 (S.D. Ala. Apr. 20, 2012) ("It would no doubt be a boon to defaulting parties everywhere if a bank holding a defaulted loan was obligated to renew the loan rather than declaring the borrower to be in default.  This court's independent research turned up no such obligation."); *Fifth Third Bank v. Waxman*, 726 F. Supp.2d 742, 753 (E.D. Ky. 2010) (finding that duty to mitigate does not impose on lender a "duty to advance additional funds to its debtor to preserve the value of loan collateral"); *Citizens Federal Bank v. United States*, 66 Fed. Cl. 179, 186 (Fed.Cl. 2005) ("the law does not require a party to mitigate in a way that requires continued dealing with the breaching party").

Similarly, compelling a lender to foreclose on collateral instead of suing to recover unpaid debts (in the absence of any contract provision imposing such a condition precedent) would stretch the concept of mitigation beyond all reasonable boundaries.  *See, e.g., SE Property Holdings, LLC v. Foley*, 2012 WL 1382523, *4 (S.D. Ala. Apr. 20, 2012) (rejecting argument that lender had a duty to mitigate damages by foreclosing on property rather than allowing interest to accrue at default rate); *REL Development, Inc. v. Branch Banking & Trust Co.*, 699 S.E.2d 779, 781-82 (Ga. App. 2010) (where contract provisions give lender the right to choose between foreclosure and filing suit, "the bank was under no duty to appellant to proceed against the collateral to collect payment," such that "the bank had no obligation to mitigate its damages in relation to the collateral"); *Fifth Third Bank v. Canvasser*, 2011 WL 2347707, *2 (Mich. App. June 14, 2011) (finding no merit to defendants' contention that plaintiff lender breached duty to mitigate by suing instead of foreclosing on collateral, reasoning that "plaintiff suffered damages as soon as the promissory notes were defaulted on; foreclosure is merely one possible remedy, and under the contracts, plaintiff had its choice of remedies.  Electing one rather than another does not *per se* constitute a failure to mitigate.").  Besides, Alabama courts have expressly declined to impose any such mandatory duty of foreclosure in the mortgage context.  *See Triple J Cattle, Inc. v. Chambers*, 551 So.2d 280, 282 (Ala. 1989) ("Upon a default by the mortgagor, the mortgagee has three remedies, and he may pursue any one or all of them until the debt is

satisfied. … He is not required to foreclose the mortgage first, but may bring his action on the note alone.").

The underlying point here is straightforward.  The Renewal Note conferred upon Whitney Bank the right to foreclose on collateral or the right to renew the loan in the event of a default.  It did not impose a duty on Whitney Bank to take either of those actions; rather, the terms of the agreement specified that it was in the lender's sole discretion whether to do so.  In those circumstances, a borrower cannot properly rely on the duty to mitigate as a tool to rewrite the contract to force the bank to act in a manner that the borrower finds most advantageous or least unpalatable.  Rather, the bank has a choice of remedies.  The borrower cannot compel the bank to choose the one that the borrower likes best, all under the guise of mitigation of damages.

### B.  *Enforceability of Default Interest Rate Provision.*

Next, the Mitchell Defendants take aim at the 18% default rate of interest specified in the Renewal Note, which interest has been accruing since the October 26, 2011 default date.  Their position is that the default interest rate is an *in terrorem* provision, designed to discourage default, and an unenforceable penalty.  While the Court appreciates the Mitchell Defendants' discourse on early 1800s Alabama statutes and judicial opinions, the inescapable fact is that these defendants do not identify a single Alabama decision striking down a similar default interest provision as unenforceable.  The omission is significant because 18% default rates are a common feature of modern commercial loans, and have been routinely enforced by courts applying Alabama law, including several recent cases emerging from this District Court.[9]

Furthermore, the Alabama legislature has expressly clarified that there is no maximum rate of interest for loan transactions whose original principal balance exceeds $2,000.  *See* Ala. Code § 8-8-5(a) ("Any person or persons [or] corporations … may agree to pay such rate or rates of interest for the loan … of money … as such person [or] corporation … may determine,

---

[9]       *See, e.g., Branch Banking and Trust Co. v. Imagine CBQ, LLC*, 2012 WL 1987830, *6-7 (S.D. Ala. June 4, 2012) (computing interest owed on promissory notes using 18% default rate); *SE Property Holdings, LLC v. Stradley*, 2012 WL 1605561, *7 (S.D. Ala. May 7, 2012) ("post-default interest will be calculated at the agreed-upon rate of 18% from December 24, 2010 until the date of entry of final judgment in this matter"); *Whitney National Bank v. Flying Tuna, LLC*, 2011 WL 4702916, *4 (S.D. Ala. Oct. 4, 2011) (computing post-default interest using 18% default interest rate, rather than 5% regular rate); *Vision Bank v. Horizon Holdings USA, LLC*, 2011 WL 4478772, *4 (S.D. Ala. Sept. 27, 2011) (similar).

notwithstanding any law of this state otherwise prescribing or limiting such rate or rates of interest; provided, that the original principal balance of the loan … is not less than $2,000"). The Alabama legislature went further than merely declining to cap interest rates for such transactions; indeed, it also provided that as to any such loan, "neither such person [or] corporation …, nor any … guarantor … which may become liable, in whole or in part, for the payment of the debt and interest agreed to be paid thereon … may raise or claim the defense or benefit of the usury laws or any other law prescribing, regulating, or limiting such rate or rates of interest." Ala. Code § 8-8-5(b). To the extent, then, that the Mitchell Defendants are attempting to argue that the 18% default interest violates an Alabama usury law or other law prescribing, regulating or limiting interest rates, that argument fails as a matter of law.

Additionally, the Court concurs with Whitney Bank's position that § 8-8-5 precludes use of an unconscionability analysis in this case. To be sure, the statute specifies that "all laws relating to unconscionability in consumer transactions … shall apply to transactions covered by this section." Ala. Code § 8-8-5(a); *see also Williams v. E.F. Hutton Mortg. Corp.*, 555 So.2d 158, 160 (Ala. 1989) ("[t]he quoted language clearly retains the application of unconscionability laws to loans of $2000 or more"). But the statutory language makes plain that the unconscionability analysis only applies to "consumer transactions," which this is not. Section 8-8-5(a) cannot reasonably be read as taking the narrow unconscionability laws focused on consumer transactions and expanding them to apply to any loan of money for any purpose whose principal amount exceeds $2,000. Plainly, then, Alabama's laws relating to unconscionability in consumer transactions can have no bearing on the default interest rate imposed in the purely commercial loan transaction at issue here, and the § 8-8-5(a) carve-out for unconscionability cannot apply.

Even if the default interest rate to which Point Clear agreed were subject to review for unconscionability, the Court finds that it is not unconscionable. Under Alabama law, a contractual provision is unconscionable when it is "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Layne v. Garner*, 612 So.2d 404, 408 (Ala. 1992) (citation omitted); *see also Pullum v. Pullum*, 58 So.3d 752, 761 n.3 (Ala. 2010) (same). Factors that Alabama courts consider in making this determination include whether one party was unsophisticated or uneducated, whether a party lacked meaningful choice, whether the contract terms were unreasonably favorable to one party,

whether there was unequal bargaining power, or whether the contract contained oppressive, one-sided, or patently unfair terms.  *Layne*, 612 So.2d at 408 (citations omitted).  Here, the record is devoid of evidence that Point Clear was unsophisticated, that there was unequal bargaining power, or that it was somehow railroaded into signing a confiscatory, oppressive Renewal Note against its will.  And the 18% default interest rate is neither oppressive nor patently unfair; rather, judging by the raft of commercial loan cases cropping up in this District Court in the last couple of years involving similar default interest terms, it is a fairly common, ordinary, routine term in such loans.  In short, the Court finds nothing unconscionable about the Renewal Note's default interest provision.[10]  Accordingly, the 18% interest rate on default specified in the Renewal Note is lawful and enforceable, and shall be used as the basis for computing all interest accruing from the October 26, 2011 date of default through the date of judgment.

> **C.    *Attorney's Fee Claim.***

In addition to unpaid principal, interest and default interest, Whitney Bank seeks an award of attorney's fees and costs.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract …."  *Jones v. Regions Bank*,

---

[10]    Insofar as the Mitchell Defendants theorize that the default rate of interest is unenforceable as a "penalty" (terminology usually reserved for the liquidated damages context), they cannot succeed because they do not identify a single Alabama authority in which a similar post-default interest rate (or, indeed, one of any size) has been struck down as unenforceable on that basis.  Courts in many other jurisdictions have rejected penalty arguments directed at default interest rates of similar magnitude to that at issue here, reasoning that increased rates of interest on default are appropriate to compensate the lender for the increased risk that it will not be able to collect once the defendant defaults.  *See, e.g., JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp and Paper Corp. Tbk*, 729 F. Supp.2d 1014, 1020 (N.D. Ill. 2010) ("in Illinois, contractual provisions mandating an increased interest rate upon default are … not unenforceable penalties"); *In re Adejobi*, 404 B.R. 78, 79 & 83 (Bankr. E.D.N.Y. 2009) (default rate of 24% approved where non-default rate was 9%); *In re K & J Properties, Inc.*, 338 B.R. 450, 460 (Bankr. D. Colo. 2005) ("Most courts have allowed, or at least recognized a presumption of allowability for, default rates of interest ….") (citation omitted); *In re Gas Reclamation, Inc. Securities Litigation*, 741 F. Supp. 1094, 1098 (S.D.N.Y. 1990) ("Under New York law, an agreement to pay an increased interest rate on default is not a penalty, but compensation for the increased risk of non-collection."); *MetLife Capital Financial Corp. v. Washington Ave. Associates L.P.*, 732 A.2d 493, 501 (N.J. 1999) ("Default interest rates … are presumed reasonable. … [I]ndustry custom provides for default rates of fifteen percent to eighteen percent.").  The Mitchell Defendants present neither citations nor persuasive arguments that Alabama courts have treated or would treat an 18% default rate differently, or perform the penalty analysis differently, than the foregoing authorities do.

25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995) (same).  The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach."  *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984).  Here, the Renewal Note provides that Point Clear "agrees to pay the reasonable fees and costs of any attorney-at-law employed by Bank to recover sums owed or to protect Bank's interests with regard to this Note."  (Sander Aff., Exh. 1, at 3.)  And the Continuing Guaranties expressly place the individual defendants on the hook for attorney's fees owed by Point Clear under the Renewal Note.  As such, there is no question that a reasonable attorney's fee is an appropriate component of damages available to Whitney Bank in this case.[11]

### 1. The $145,000 Fee Request is Hypothetical and Improper.

On summary judgment, plaintiff claims entitlement "to an award of attorneys' fees in connection with the Defendants' indebtedness in the amount of $145,000.00, which represents five percent (5%) of the outstanding principal balance."  (Doc. 35, at 5.)  The problem, as defendants correctly observe, is that this $145,000 figure was, for all intents and purposes, pulled out of a hat.  It bears no discernible relationship to the actual attorney's fees that Whitney Bank has incurred to date in its collection efforts.  In fact, plaintiff's own evidence is that it accrued less than $19,000 in attorney's fees through the end of February 2012 in "its efforts to collect from the Defendants the indebtedness owed to Whitney under the Note."  (Peebles Aff. (doc. 35, Exh. B), at ¶ 7.)  Simply put, there is no evidence that Whitney Bank has paid its attorneys $145,000 to collect the debt in this case, that plaintiff's retainer agreement for its attorneys provides for computation of fees based on a percentage of the principal amount of the loan, or that plaintiff's counsel are representing plaintiff in this case pursuant to anything other than a standard hourly billing arrangement.[12]

---

[11]     To be recoverable under Alabama law, the attorney's fees must be "reasonable." *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.").

[12]     This makes for an interesting thought experiment.  Suppose this Court were to award plaintiff $145,000 in attorney's fees, and plaintiff were to collect it.  Even after accounting for fees accrued through the end of May 2012, plaintiff's billings are only in the neighborhood of $37,000.  What happens to the other $108,000?  Does Whitney Bank keep it?  If so, then it is not (Continued)

Plaintiff's contention that a 5% fee would be reasonable under Alabama law, and its submission of evidence in support of same, is unavailing.  This Court has previously condemned the use of hypothetical percentage-based fee awards in cases such as this.  Simply put, "[t]he Court's task is not to ascertain what a hypothetically reasonable attorney's fee might be and to award that amount to plaintiff, but is instead to determine [plaintiff]'s *actual* attorney's fee incurred in enforcing its rights against [defendant] in this matter, and to ascertain whether that actual figure (not a hypothetical fee untethered to [plaintiff]'s actual financial commitment) is a 'reasonable attorney's fee' within the ambit of" the contractual fee-shifting provision.  *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).  Another way to look at it is as follows:  the Renewal Note provides that Point Clear "agrees to pay the reasonable fees and costs of any attorney-at-law employed by Bank."  (Sander Aff., Exh. 1, at 3.)  The only logical reading of the "reasonable fees and costs" contemplated by that fee-shifting provision is that it references the <u>actual</u> fees that Whitney Bank incurs.  There being no indication that Whitney Bank owes its lawyers $145,000 for their professional services on the Point Clear collection matter, whether $145,000 would or would not be a hypothetically reasonable fee is of no consequence.  Plaintiff may recover only its actual reasonable attorney's fees, as a matter of law and of contract.  The Court will neither rewrite the Renewal Note to insert language obligating the borrower to pay 5% of the outstanding principal as an attorney's fee, nor speculate that plaintiff's lawyers agreed to represent plaintiff on a contingency basis for a fee of 5% of the principal amount collected.[13]

---

an attorney's fee at all, but an improper windfall to the lender.  Is it paid to counsel?  If so, then it is an unreasonable windfall to counsel if (as the Court strongly suspects) the basis of the attorney-client relationship between Whitney Bank and its lawyers is payment on an hourly basis rather than a contingency basis.  The point is that the resulting vast differential between the $145,000 attorney's fee figure that plaintiff has culled from thin air and the actual attorney's fees that plaintiff owes its attorneys under the applicable retainer agreement represents an improper windfall to someone, and therefore cannot and will not be awarded.

[13]     Nor will the Court defer to plaintiff's purported reservation of its right "to ask the Court for additional reasonable attorneys' [fees] in the event that the current fees are not sufficient to cover any post-judgment events or occurrences."  (Doc. 35, at 6 n.1.)  In a contractual fee-shifting case, attorney's fees are part of the judgment.  They may not be awarded via post-judgment motion under Rule 54.  *See, e.g., Vision Bank v. Rookery, LLC*, 2012 WL 468351, *3 (S.D. Ala. Feb. 14, 2012) (citing authorities).  And any award today of attorney's (Continued)

## 2.   *Plaintiff has Not Properly Requested Award of Actual Fees.*

It is well-settled that "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." *Kiker v. Probate Court of Mobile County*, 67 So.3d 865, 867 (Ala. 2010) (citations omitted).  To guide this reasonableness inquiry, Alabama courts recognize a non-exhaustive list of criteria that may properly be considered, including: "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552-53 (Ala. 2004) (citation omitted).

As a general proposition, "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.... The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted).  "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

Notwithstanding the foregoing, three distinct procedural considerations foreclose the award of an actual, reasonable attorney's fee to Whitney Bank on the basis of a lodestar analysis.

---

fees that will only be incurred (if ever) sometime in the future based on sheer guesswork and conjecture that collection might be difficult would be improper. *See PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 2010 WL 4677772, *4 (S.D. Ala. Nov. 8, 2010) (declining to award "[s]peculative future attorney's fees" for future collection efforts, where "[t]here is no evidence from which one could surmise how easy or difficult, efficient or time-consuming, any collection efforts may be in this case"); *Farm Credit of Northwest Florida, ACA v. R & B Const. of South Alabama, Inc.*, 2009 WL 4456340, *5 n.7 (S.D. Ala. Nov. 24, 2009) ("To say that collection of default judgments is frequently an expensive endeavor is not to say that there is any particular reason to believe it will be expensive in this case.  No such reason has been identified.").

First, plaintiff's Motion for Summary Judgment leaves no ambiguity that it is not requesting a lodestar award of actual fees, but instead seeks "an attorneys' fee of $145,000." (Doc. 35, at 9; doc. 43, at 3.)  The Court will not enter a lodestar award when plaintiff has not requested same. Second, although plaintiff's reply brief is accompanied by a supplemental affidavit of counsel purporting to set forth the actual hours and rates charged to Whitney Bank (*see* Peebles Supp. Aff. (doc. 48, Exh. B), at ¶¶ 4-7), plaintiff has not submitted the invoices or detailed billing records that are crucial to any assessment of the reasonableness of the time spent for purposes of a lodestar analysis.  *See Vision Bank v. Hill*, 2011 WL 250430, *4 n.6 (S.D. Ala. Jan. 25, 2011) (disallowing plaintiff's request for award of attorney's fees, where "without itemization or explanation of what these attorney's fees … represent or how they were incurred, the Court cannot satisfy its obligation to ascertain the reasonableness of the charges"); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 2010 WL 4677772, *4 n.7 (S.D. Ala. Nov. 8, 2010) (noting that "submitting detailed, itemized billing records and time entries setting forth the hours billed and tasks performed by counsel … is customary in attorney's fee petitions").[14]  Third, plaintiff waited until its reply brief to submit any lodestar information concerning hours and hourly rates, after it was too late for defendants to be heard in response.  As a general proposition, and in the interests of fairness to all parties and efficient use of judicial resources, new arguments raised for the first time in a reply brief are not considered.  *See, e.g., Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished,

---

[14]     Plaintiff's citation of this Court's decision in *First Financial Bank v. CS Assets, LLC*, 678 F. Supp.2d 1216 (S.D. Ala. 2010) for the proposition that it need not itemize its fees is misplaced.  *First Financial* is readily distinguishable from the case at bar because (i) in *First Financial*, the attorney's fees at issue had been incurred in a related, already-concluded case; (ii) a state court in separate proceedings had already entered a specific ruling fixing the amount of the reasonable attorney's fees incurred in that related matter; (iii) the non-movant had the full discovery process in *First Financial* to obtain detailed records as to the fee award in the related case; and (iv) in *First Financial*, the non-movant made no challenge to the reasonableness of the fee award, but simply quibbled with the manner in which proof of the fees was offered.  By contrast, in this case, the attorney's fees relate to an ongoing proceeding; no court has made any finding of reasonableness as to the requested fees; non-movants were not reasonably able to use the discovery process to obtain proof of fees that were still accruing; and non-movants have raised a specific, direct challenge to reasonableness of the fees at issue, which reasonableness can only be ascertained by reference to detailed billing records.  *First Financial* is neither instructive nor on-point in these circumstances.

arguments raised for the first time in a reply brief are not properly before a reviewing court.").[15] Plaintiff could have presented its actual hours and rates in its principal brief had it wished to proceed on its claim for attorney's fees in that manner.  Having chosen not to do so at that time, but instead to posture its fee claim as one seeking a flat $145,000 award, plaintiff cannot be heard in its reply to reconfigure its attorney's fee claim as one adopting the lodestar approach.

For all of the foregoing reasons, the Court finds that plaintiff has failed to present an adequate claim for reasonable attorney's fees using the lodestar methodology; therefore, no attorney's fees will be awarded.[16]

---

[15]     *See also Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1332-33 (S.D. Ala. 2011) ("Defendant could have raised the statutory damages argument in its principal brief …. Movant's election not to advance in its principal brief readily available arguments concerning the obvious statutory damages issue precludes it from being heard as to same in its Reply."); *Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered."); *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455, *8 (S.D. Ala. Apr. 1, 2008) ("In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief.").

[16]     As previously noted, where a plaintiff seeks to recover attorney's fees pursuant to a fee-shifting provision in a contract, the fees are an integral part of the merits of the case.  *See, e.g., Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1355 (11th Cir. 2002) ("[i]n this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue"); *Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case.").  In other words, attorney's fees are part of the judgment, rather than an after-the-fact award under Local Rule 54.3.  The Court deems it inappropriate to delay entry of judgment in this case to afford plaintiff a second opportunity to prove up its attorney's fees.  To impose a new briefing schedule and to re-examine the attorney's fee issue would likely delay the entry of judgment by a month or more, during which time default interest would continue to accrue on the principal balance of the loan at the default rate of 18% (or $1,450 per day) rather than the post-judgment rate of 0.18% that would apply under 28 U.S.C. § 1961(a).  The default interest accruing in the interim would likely dwarf the total amount of attorney's fees in dispute.  In lieu of such an inefficient and inequitable result (*i.e.*, delaying entry of judgment to allow plaintiff to attempt to fix deficiencies in its original proof, while simultaneously rewarding plaintiff for those deficiencies by allowing lucrative default interest to accumulate in the interim), the Court will enter judgment now, thereby staunching the flow of default interest accrual.  It would of course be plaintiff's prerogative, if it so chose, to move to alter or amend the judgment under Rule 59(e), Fed.R.Civ.P., (not Rule 54(d)(2)) to (Continued)

### D.      Post-Judgment Interest.

Finally, the Point Clear Defendants request that any post-judgment interest in this case be awarded at the federal rate prescribed by 28 U.S.C. § 1961(a), rather than the contractual default rate of 18%.  Plaintiff has not requested that the 18% default rate continue to apply on a post-judgment basis, nor could it reasonably do so.  Under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a). The statute further provides that such interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  *Id.* (footnote omitted).  Where, as here, the applicable contracts do not contain express provision for post-judgment interest to accrue at a rate different than that set forth in § 1961(a), the statutory rate governs, as a matter of law.  *See, e.g., Vision Bank v. Garrett Investments, LLC*, 2012 WL 628915, *4 (S.D. Ala. Feb. 27, 2012) ("Because the Note does not contain an express provision for a post-judgment interest rate, Vision Bank is entitled to post-judgment interest only to the extent provided by § 1961(a).").

According to the most current iteration of Federal Reserve Statistical Release H.15, dated June 18, 2012 and found at www.federalreserve.gov/releases/h15/current, the average 1–year constant maturity Treasury yield for the week ending June 15, 2012 was 0.18%.   As such, post-judgment interest shall accrue at the statutory rate of **0.18%** from this date forward.

### E.      Total Damages Award.

In sum, plaintiff has established based on uncontroverted facts that it is entitled to entry of judgment in its favor as a matter of law on its claims for breach of the Renewal Note by defendant Point Clear Development, LLC; and for breach of the Continuing Guaranties by defendants J. Myles Reed, Barton E. Kaiser, Thomas W. Mitchell, and Thomas E. Mitchell. Damages have been proven in the following categories and amounts:

---

include an award of reasonable attorney's fees upon an appropriate offer of proof.  The Court questions, however, whether further litigation over attorney's fees would be a prudent use of anyone's resources, given those fees' relatively small magnitude compared to the total judgment and the potential challenges that lie ahead for plaintiff to collect on the seven-figure judgment being entered today.

       (i)       unpaid principal in the sum of **$2,900,000**, as documented by paragraph 12 of the Sander Affidavit;

       (ii)      prejudgment interest in the sum of **$30,450.00** for the period of August 3, 2011 (date of breach) through October 25, 2011 (date of default), calculated at the contractual rate of 4.5% on the total outstanding principal of $2.9 million (or .045 x $2,900,000 x 84 days / 360 days), per paragraph 6 of the Supplemental Sander Affidavit; and

       (iii)     prejudgment interest in the sum of **$342,200.00** for the period of October 26, 2011 through the date of entry of this Order and Judgment, calculated at the contractual default interest rate of 18% on the total outstanding principal of $2.9 million (or 0.18 x $2,900,000 x 236 days / 360 days).

Thus, summary judgment will be entered against defendants, jointly and severally, in the amount of **$3,272,650**, as to which post-judgment interest will accrue at the statutory rate of **0.18%**.

IV.    **Conclusion.**

       For all of the foregoing reasons, it is **ordered** as follows:

1. The Mitchell Defendants' Motion to Strike (doc. 46) is **moot** because the undersigned did not rely on any of the particular items in plaintiff's evidentiary submission to which objection was made;

2. Plaintiff's Motion for Summary Judgment (doc. 34) is **granted in part**, **denied in part,** and **moot in part** (as to former defendant Anthony Kaiser);

3. Judgment will be entered in plaintiff's favor and against all remaining defendants, jointly and severally, in the total amount of **$3,272,650.00**;

4. Post-judgment interest will accrue on this sum at the statutory rate of **0.18%**;

5. A separate judgment will enter; and

6. This Order and the accompanying Judgment having resolved all issues against all parties herein, the Clerk's Office is **directed** to close this file for statistical and administrative purposes.

DONE and ORDERED this 18th day of June, 2012.

                         s/ WILLIAM H. STEELE
                         CHIEF UNITED STATES DISTRICT JUDGE